## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Tuition Payer 100, Viewed Student Female 200, Viewed Student Male 300, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>)<br>     Plaintiffs, )<br>)<br>v. )<br>)<br>The Bishop of Charleston, a Corporation Sole, Bishop England High School, Tortfeasors 1-10, The Bishop of the Diocese of Charleston, in his official capacity, and Robert Guglielmone, individually, )<br>)<br>)<br>)<br>)<br>)<br>)<br>     Defendants. )<br>_____) | Civil Action No. 2:21-613-RMG<br><br>**ORDER AND OPINION** |

Before the Court is non-party LS3P Associated Ltd. ("LS3P")'s motion for a protective order terminating or otherwise limiting the Rule 30(b)(6) deposition of LS3P. (Dkt. No. 25). For the reasons set forth below, the Court denies LS3P's motion and orders that the Rule 30(b)(6) deposition of LS3P be resumed and duly completed.

**Facts**

Plaintiffs bring this putative class action alleging that, for roughly two decades, students at Bishop England High School ("BEHS") were made to disrobe in locker rooms which contained "large glass window[s]" whereby BEHS employees, agents, and/or others may have viewed students. (Dkt. No. 1-1 at 4-5).

On June 16, 2021, Plaintiff served non-party LS3P with a Notice of 30(b)(6) Deposition. (Dkt. No. 25-1). The designated subject matter of inquiry was:

1

> [T]he planning, design, and building of [BEHS] to include information about any meeting minutes, contracts or payments from the project.

(Dkt. No. 25-2).

On June 18, 2021, counsel for LS3P wrote Plaintiffs' counsel requesting that Plaintiffs "be more specific in the designation of topics" Plaintiffs wished to explore. *See* (Dkt. No. 25-3 at 1).

On June 22, 2021, Plaintiffs' counsel responded that while Plaintiffs did not intend to "unduly burden anyone in this matter," "[s]urely . . . [LS3P] can recognize the importance of us learning about the conception and effectuation of construction of [BEHS]. Concomitantly, we need to know the financial decision making arrangements between the architectural firm [namely LS3P] and any other party concerning the project." (Dkt. No. 25-10 at 2).

On July 2, 2021, LS3P wrote Plaintiffs' counsel that LS3P would produce a witness "who will be prepared to testify to meeting minutes as they relate to the planning, design, and building of [BEHS], contracts as they relate to the planning, design, and building of [BEHS], and payment as they relate to the planning design and building of [BEHS]. Any topics beyond those three listed will be considered outside the scope of the topics listed for this 30(b)(6) deposition." (Dkt. No. 25-4 at 1).

On July 6, 2021, Plaintiffs' counsel responded to LS3P. Plaintiffs stated:

> As to the designated areas of examination, we have specifically stated:
>
> -the planning of BEHS
> -the design of BEHS
> -the building of BEHS
> -for all of the above, including information about minutes of meetings concerning the project
> -for all of the above, including information about contracts concerning the project
> -for all of the above, including information about payments concerning the project[.]
>
> As to each of those areas of inquiry, *we will certainly inquire as to the LS3P principals and/or employees who were involved*, what writings exist, to include

2

> billings and payments for the LS3P services. Certainly, I understand the scope of this project, but I am not clear at whose suggestion the design was effectuated, *(particularly concerning the viewing windows to the dressing/locker rooms, or any others)*.
>
> I don't think . . . that it makes any sense at this point to try to do a narrower examination, and I understand and accept that it may be necessary to examine other persons with specialized skills or involvement in the LS3P functioning.

(Dkt. No. 25-5 at 1) (emphasis added).

On July 7, 2021, LS3P's counsel responded that Plaintiffs' notice was still overbroad, but that LS3P "believe[d] the solution to any disagreement . . . can be found in the second paragraph of your [prior] email." LS3P then stated what it believed the scope of the impending deposition now was:

> 1. the LS3P principals and/or employees who were involved;
> 2. what writings exist, to include billings and payments for the LS3P services;
> 3. at whose suggestion or request the design was effectuated (particularly concerning the viewing windows as to the dressing/locker rooms, or any others).
>
> Those three categories are sufficiently defined areas of inquiry that, when combined with the (following) three categories that you did specifically set forth in your subpoena, can provide the basis for the 30(b)(6) deposition to proceed:
> 1. Meeting minutes relating to the planning, design and building of the Project;
> 2. Contracts relating to the planning, design and building of the Project;
> 3. Payments relating to the planning, design and building of the Project.

(Dkt. No. 25-6 at 1) (emphasis removed) (noting that LS3P would consider "anything beyond those topics to be outside the scope of the deposition).

On July 7, 2021, Plaintiffs' counsel responded that while he found LS3P's email "confusing," he wasn't "sure that we're not both saying the same thing, but somehow failing to

3

hear each other." Plaintiffs concluded that "we'll just have to go forward and do the best that we can tomorrow morning." (Dkt. No. 25-7 at 1).

On July 8, 2021, LS3P's 30(b)(6) representative, Roger A. Attanasio, was deposed. (Dkt. No. 25-9). Under two hours into the deposition, Plaintiffs' counsel asked Attanasio if he thought it "would have been a good idea" to place "signs warning children that in [the BEHS locker rooms] . . . you may be viewed nude." (Dkt. No. 25-9 at 19). Attanasio answered, "Beyond the scope of this deposition." (*Id.*). Plaintiff's counsel responded that he was "not able to go forward any further" given this answer. (*Id.*) ("[LS3P's Counsel]: You're terminating it? [Plaintiffs' Counsel]: He is terminating it by refusing to the answer the question").

On July 15, 2021, LS3P moved for a protective order to terminate or limit its Rule 30(b)(6) deposition. (Dkt. No. 25). Plaintiffs oppose. (Dkt. No. 27). LS3P filed a reply. (Dkt. No. 30).

LS3P's motion is fully briefed and ripe for disposition.

**Legal Standard/Analysis**

LS3P asks this Court to either (a) order that the deposition of LS3P be terminated or, in the alternative, (b) order that the deposition of LS3P be limited in scope and manner. Implicit in LS3P's motion is a request that the Court find that Plaintiffs' Rule 30(b)(6) notice was not defined with reasonable particularity.

As a preliminary matter, the Court finds that Plaintiffs' Rule 30(b)(6) notice did state with reasonable particularity its topics of inquiry.

Rule 30(b)(6) of the Federal Rules of Civil Procedure puts certain burdens on both parties. The initial burden under this rule falls on the Plaintiffs. Specifically, before LS3P even needed to designate a witness under the notice of deposition, Plaintiffs must have "described with reasonable particularity the matters on which examination is requested." Fed. R. Civ. P. 30(b)(6). Here,

4

Plaintiffs sought to question LS3P on "the planning, design, and building of [BEHS] . . . include[ing] information about any meeting minutes, contracts or payments from the project." (Dkt. No. 25-2 at 1). "[T]he implied limit of discoverability in any discovery device is Fed. R. Civ. P. 26(b)(1). That is, [P]laintiffs specifically stated they wanted [the above noted testimony]; [and] when combined with Rule 26(b)(1), the limits of that testimony is 'any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Alexander v. FBI*, 186 F.R.D. 137, 139 (D.D.C. 1998). As "[b]oth parties are well aware of the discoverable issues in this case," LS3P was "on sufficient notice of what discoverable matters the [P]laintiffs would inquire into." *Id.* (rejecting the argument that plaintiffs' topic of inquiry—"the computer systems commonly known as or referred to as 'Big Brother and/or 'WHODB'"—was not sufficiently particular given facts of case); *see* July 6, 2021 Email from Plaintiffs' Counsel to LS3P, (Dkt. No. 25-5) (noting Plaintiffs "will certainly inquire as to the LS3P principals and/or employees who were involved" and will seek information regarding "*at whose suggestion or request the design was effectuated (particularly concerning the viewing windows as to the dressing/locker rooms, or any others)*") (emphasis added); *see also Alexander*, 186 F.R.D. at 140 (further rejecting defendants' argument that plaintiffs' notice was not stated with sufficient particularity given plaintiff sent defendants a letter "enumerating seven areas of testimony on which the WhoDB witness . . . would be expected to testify") (*citing United States v. Taylor*, 356, 361 (M.D.N.C. 1996) (stating that the "reasonable particularity" requirement of Fed. R. Civ. P. 30(b)(6) was met by notice given to the defendant-designator by means outside of the notice of deposition)); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (S.D. 2009) (finding plaintiff did not notice Rule 30(b)(6) deposition with reasonable particularity where plaintiff

sought information "regarding (1) the corporate history of four corporate entities, (2) the corporate relationship between these entities, and (3) the bankruptcy of 2001").

The Court further denies LS3P's request to terminate the Rule 30(b)(6) deposition of LS3P and—instead—orders that said deposition be reconvened. The Court has reviewed the entire transcript of LS3P's deposition. The Court finds problematic the conduct of LS3P's representative Attanasio and, to a lesser degree, LS3P's counsel. Contrary to Plaintiffs' characterization otherwise, Attanasio did respond to most questions Plaintiffs posed him. *See generally* (Dkt. No. 30-2). Problematically, however, Attanasio often answered questions only after stating that *he* believed a question was "outside the scope" of Plaintiffs' Rule 30(b)(6) notice. *See, e.g.*, (Dkt. No. 25-9 at 7, 9, 10, 12, 17, 19). Plaintiffs argue Attanasio testified in this manner at the prompting of LS3P's counsel who frequently objected as to scope. *See* (*id.*).[1] This may be so. In sum, Attanasio's and LS3P's counsel's behavior was inappropriate and violated Fed. R. Civ. P. 30(c)(2) and Local Civil Rule 30.04(C). Fed. R. Civ. P. 30(c)(2) (noting counsel—not the deponent—should state on the record objections "in a nonargumentative and nonsuggestive manner"); Local Civil Rule 30.04(C), D.S.C. (noting that "counsel shall have an affirmative duty to inform their

---

[1] The Court notes that LS3P's counsel objected to various topics as outside the "scope" of Plaintiffs' notice despite the fact these subjects were clearly proper—even under the limits LS3P attempted to impose on the deposition. *See, e.g.*, (Dkt. No. 25-9 at 7) (objecting to the question of whether LS3P "knew when it drew the plan for construction of the school that on one side of that window would be children . . . in various states of dress"); (*Id.* at 8) (objecting to the question of whether LS3P could place windows at certain points in BEHS without such windows being present in an architectural plan); (*Id.* at 10-11) (objecting to questions as to why bathrooms did not contain windows through which school personnel could theoretically monitor potential altercations between students); (*Id.* at 12) (objecting that the question "Who came up with the idea of putting viewing windows in the locker room?" was "outside the scope" of the deposition). Inexplicably, this last area of inquiry was a topic which LS3P stated *was* properly defined by Plaintiffs' notice. (Dkt. No. 26-5 at 1) (noting as a "sufficiently defined area[]" of inquiry the subject of "at whose suggestion or request the design was effectuated (particularly concerning the viewing windows to the dressing/locker rooms, or any others").

clients that unless [an objection regarding privilege or a court ordered limitation] is made, *the question must be answered*") (emphasis added).

Considering the above, the Court finds LS3P and its counsel failed to comply with the rules governing the conduct of oral depositions. Fed. R. Civ. P. 30(c); Local Civil Rule 30.04. The Court therefore directs LS3P to make Attanasio available to Plaintiffs to complete in its entirety the Rule 30(b)(6) deposition of LS3P. The Court grants Plaintiffs' request that they be permitted to "pos[e] questions that were already posed and/or attempted to be posed in the first deposition to which Plaintiffs did not have any opportunity to explore and/or develop." (Dkt. No. 27 at 15). By August 30, 2021, the parties shall meet and confer, schedule, and complete this deposition. The Court orders LS3P's counsel to comply with the rules governing conduct of oral depositions including the local rules of this Court.[2]

---

[2] Currently, the Court declines to award attorney's fees to Plaintiffs under Fed. R. 26(c)(3) and 37(a)(5)(B). The Court finds an award of attorney's fees would be unjust and unwarranted given the fact that, until the moment the deposition stopped, Attanasio had ultimately responded to most of Plaintiffs' questions. Relatedly, LS3P's counsel's objections as to scope—while not always well reasoned—were lodged in accordance with Fed. R. Civ. P. 30(c)(2).

## Conclusion

For the reasons stated above, the Court **DENIES** Defendants' motion for a protective order to terminate or limit the deposition of LS3P (Dkt. No. 25).  The Court further **ORDERS** Plaintiffs and LS3P to, by August 30, 2021, meet and confer, schedule, reconvene and complete the Rule 30(b)(6) deposition of LS3P in accordance with this Order.

**AND IT SO ORDERED**.

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 9, 2021
Charleston, South Carolina