**United States District Court**
**District of South Carolina**
**Charleston Division**

| | | |
|---|---|---|
| Gary Nestler,<br>Viewed Student Female 200,<br>Viewed Student Male 300,<br>on behalf of themselves and all others<br>similarly situated,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br><br>The Bishop of Charleston, a Corporation<br>Sole, Bishop England High School,<br>Tortfeasors 1-10, The Bishop of the Diocese<br>of Charleston, in his official capacity, and<br>Robert Guglielmone, individually,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A: 2-21-cv-00613-RMG<br><br><br><br><br><br><br><br><br><br>**AMENDED CONSOLIDATED**<br>**CLASS ACTION COMPLAINT** |

Plaintiffs, by and through their undersigned counsel, bring this action in their individual

capacities and on behalf of the class of persons defined below against Defendants The Bishop of

Charleston, a Corporation Sole, ("Diocese"), Bishop England High School ("BEHS"),

Tortfeasors 1-10 whose identity is unknown/not sufficiently known, nor formally or specifically

known because of the dishonest, deceptive, deceitful conduct of Defendants herein and/or others,

but whose identity and specific acts Plaintiffs will seek to learn in discovery in this case, and

who may be added as additional parties Defendant, and Robert Guglielmone, individually, in

addition to his official role as Bishop, head, of the Diocese of Charleston, who has sought to alter

truth and/or impede and/or avoid and cover up Defendants' actions related to sexual and/or other abuse of children, and who acted improperly, illegally, and conspiratorially to the detriment of Plaintiffs herein and for the benefit of Defendants herein, all improperly and impermissibly so (collectively "Defendants"). This action is based upon Plaintiffs' personal knowledge, except as to any allegations on information and belief, and as to any such, Plaintiffs believe them to be true.

## I.    OVERVIEW OF THIS ACTION

1.    This class action lawsuit arises from egregious acts of BEHS by and through its employees, agents and/or servants and by the Diocese which governs the same and its Bishop. For at least two decades (since 1998) BEHS students were made and required to disrobe partially or fully, exposing themselves in locker rooms controlled by Defendants BEHS and the Diocese. Each of the locker rooms (boys and girls) were subject to viewing through a large glass window, positioned at desktop height as shown on **Exhibit 1**, while students were using the dressing room/locker room/shower room/toilet room facilities at Bishop England High School. At some times the referenced students were completely clothed. At times the students were partially or completely nude.

2.    Defendants acted together with, in the name of, for their mutual benefit, on behalf of, by, through, for, and in conjunction with, each other.

3.    BEHS students are and were during the relevant time period required to take physical education classes and to use the referenced dressing rooms for purposes of changing clothes and/or putting on various forms of equipment and cleaning themselves.

4.    The confirmed exposure of BEHS students became public knowledge in May of 2019 when an employee of BEHS was found to have made video recordings of BEHS students

who were either partially or entirely unclothed while using the described facilities.  That individual was arrested, criminally charged with voyeurism, subsequently entered a plea of guilty in the Berkeley County Court of General Sessions, and was sentenced.  A copy of the Indictments and Sentencing Sheet are attached hereto as **Exhibit 2**.

5.     Until this matter became public as described above, the parents, guardians, and/or tuition payers for the viewed students were not aware of the existence of the viewing windows referenced herein nor that they were being utilized by BEHS employees and agents or others to view BEHS students. At this same time period the subject students, Plaintiffs/the VIEWED CLASS, learned, understood, realized, came to know the use of the windows, and that those, almost entirely minor students had been objectified, their privacy invaded and compromised, and they were sickened, betrayed, embarrassed, fearful, and sad; they still are today and will continue to suffer. Named Plaintiffs and all class members, in both classes, have damages far in excess of the South Carolina required minimum amount. All students in the VIEWED CLASS were trained, taught, and accepted that they were subject to the rules and conditions established and imposed by Defendants.

6.     Defendants have long held themselves out to be leading, moral, religious, and educational authorities, even after expressly stating publicly the kind and manner of education it would provide for the students for whom the subject tuition was paid.   Defendants promised to provide this kind of education which had previously been so broadly described, and failed to do so but it kept the tuition money paid by TUITION CLASS and kept hiding their deplorable conduct from the class.  Defendants boasted that BEHS provided a safe, moral, respectful, environment based on the teachings of the Catholic Church. Such was represented to Plaintiffs herein by Defendants.

7.      Defendants never revealed to the TUITION CLASS that children, students, were subject to viewing and were actually viewed during their use of the dressing rooms/locker room facilities; and that the very purpose of the subject windows was to facilitate viewing of persons using the locker room dressing room facilities, whether such persons were naked or fully clothed.

8.      Dressing rooms/locker rooms are reasonably expected to be private, safe, personal spaces, just as are the bathroom facilities in the school. At all times since its opening on Daniel Island in 1998, BEHS has required male and female students, almost entirely minor children, and any others using such school facilities, to disrobe in view of the large plate glass windows which are in the shared walls of the dressing rooms/locker room and the offices of the BEHS athletic department and/or other school personnel.

9.      All users of the BEHS dressing rooms /locker room were subject to viewing by any persons who were in the viewing rooms or in any position to look through the clear glass window, for example when the door to the office space or viewing room was open or when entering the viewing area for some legitimate purpose.

10.     The viewing windows were each almost exactly four feet by four feet in size and, as stated previously, the bottom of each window was at desktop height.

11.     Access to the viewing room was also available to persons making deliveries, visiting, cleaning, and/or replacing or servicing equipment therein as wells as those referenced in paragraph 9 above.

12.     All Defendants knew or should have known of the danger and the propensity of persons to view students changing clothes in the dressing/locker room.

13.     Defendants knew or should have known that many persons associated with Catholic schools and churches had viewed and abused minor children, and that the Diocese has been ridden with priests who were sexual predators of children.

14.     The many misdeeds of a sexual nature perpetrated by the clergy or other agents of the Diocese of Charleston, BEHS, and/or Bishop Robert Guglielmone in his official capacity and/or personal capacities, are well known to and have been many times admitted by Defendants. Because of this history, it should have been reasonably foreseeable that BEHS and all Defendants should have been sensitive to not creating an environment where such abuse and objectification would be able to develop, thrive, and prosper.

15.     Similar sentiments have been expressed by at least one Diocese official. Principal Finneran has made at least two writings so stating, attached hereto as **Exhibits 3 and 4**.

16.     Defendants had the authority to never have installed the windows or even make them, so that viewing students in the dressing/locker room was not even possible.  Instead, the windows were covered with blinds that could be and were controlled and/or manipulated from within the viewing rooms; of course, without warning or knowledge to students or tuition payers.

17.     The unlawful and improper acts heretofore and hereafter referenced were committed and done without the knowledge or consent of the tuition payers or of the victims of such viewings, as is illustrated by indictments and guilty plea to the criminal charge brought against the BEHS employee referenced above. Further, the children victims did not and could not consent to such acts, criminal acts.  After the window and viewing information became public, Defendants covered them with plywood within a matter of hours, this after being in place and used to view nude and/or partially nude children for more than twenty years.

18.    In addition, the persons who agreed to and paid tuition to BEHS for a certain class, quality, level of education, personal development, safety, and protection for each respective student, and the VIEWED CLASS students themselves, were never aware of such viewing facilities until the matter became publicly known.

19.    Plaintiffs/class representatives bring this action on behalf of themselves and all persons paying tuition and/or fees or costs to BEHS for the purpose of obtaining for the respective student for whom such tuition was paid, the quality and kind of safe environment and education which Defendants BEHS and the Diocese publicly proclaimed would be afforded to the minor students who were all victims of the illicit activity heretofore referenced, and the same for all VIEWED CLASS Plaintiffs and members.

20.    Defendants failed and/or refused to take steps to protect the students from an obvious and foreseeable danger for more than twenty years.

21.    The relevant time period is the entire existence of the Daniel Island campus of BEHS during which time thousands of students, mostly children, were actual victims of voyeurism, invasion of privacy, objectification, shame, and other harms, or were susceptible, and at least hundreds, if not thousands, of tuition payers received what was not represented to them by Defendants: an unsafe environment for the child students. By this action the TUITION CLASS seeks damages of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorneys fees, and with such additional relief and items of recovery as may be permissible for a class of tuition payers as referenced.

22.    Also sought is a class of those subjected to exposing their bodies, fully or partially unclothed, to various persons for viewing. By this action the VIEWED CLASS seeks damages of $150,000,000.00 together with costs and attorneys fees.

## II.     <u>**JURISDICTION AND PARTIES**</u>

23.     The Diocese is a corporation sole and the governance and organization of the Catholic Church throughout the entire state of South Carolina. It does business in all counties of the state and the Bishop of the Diocese of Charleston is the ultimate authority for diocesan matters everywhere in the state.

24.     The Diocese has been sued many times in the state courts of South Carolina including in Charleston, Berkeley, and Dorchester counties, and has routinely been found subject to the jurisdiction of the presiding Court of Common Pleas.

25.     The Diocese has also brought suit in the state of South Carolina and alleged it is subject to jurisdiction of the presiding Court of Common Pleas.

26.     BEHS is a private school whose principal place of business is located in Berkeley County, South Carolina, at 363 Seven Farms Drive, Charleston, South Carolina 29492.

27.     BEHS and the Diocese of Charleston utilize aliases when transacting their business. It is difficult for someone wronged by the Diocese of Charleston, and/or its agents, or BEHS, and/or its agents, to know what name, for subterfuge or otherwise, each of these Defendants is operating under at a given point in time.  For example, attached hereto as **Exhibit 5**, is *Bishop England High School v. George Hudson and Eun-Hee Hudson, Civil Action Number 2011-CP-10-5391*, whereby BEHS, in that name, is suing to collect claimed due tuition payments.  Also **Exhibit 6** is an Affidavit of John Barker, whereby he, an official of the Diocese, swears under oath that BEHS is not a separate entity and states that BEHS "does not exist as a separate juridic person apart from the Diocese. Therefore, its assets are entirely owned by the Diocese, and its civil law presence in the Corporation Sole." There are numerous other such examples in the permanent public records found in the counties of Charleston, Berkeley, and

other counties in the state. See **Exhibit 7**, excerpts from the July 17, 2019 Transcript of Record in *John Doe v. The Bishop of Charleston, a Corporation Sole, et al, Civil Action Number 2018-CP-10-03929* and *Richard Roe v. The Bishop of Charleston, a Corporation Sole, et al, Civil Action Number 2018-CP-10-04206* where counsel for the Defendants stated the Bishop of Charleston "has no presence in civil law" and copies of other pleading excerpts showing the Diocese Defendants being sued and suing in that name with the lawyer addressing the court and disavowing the very existence of a party being the same lawyer who represented the "non existing party" suing for money damages as a Plaintiff.

28.     BEHS is not incorporated.

29.     BEHS is not a partnership.

30.     BEHS is an unincorporated association.

31.     BEHS is an education facility operated by the Diocese and under the full and final authority of the Diocese of Charleston through its Bishop. In addition, the Diocese has a superintendent of education, whose office and activities are directed out of the diocesan offices in Charleston, South Carolina.

32.     Plaintiff Gary Nestler (hereinafter "Tuition Payer" or "Nestler") is a resident of the state of South Carolina, County of Charleston, who has paid tuition for another person for a certain promised education in a certain promised form, substance, manner, and style, which was not delivered as promised by BEHS and/or the Diocese of Charleston and Plaintiffs Viewed Student Female 200 and Viewed Student Male 300 are residents of the state of South Carolina, County of Charleston, who are victims of the illegal and illicit practices of Defendants herein described and have been proximately damaged as a result.

33. Over the time that BEHS has been located in its current physical campus, including buildings and grounds, a student body of approximately seven hundred students has been maintained annually.

34. On information and belief, the current BEHS campus was constructed in the late 1990's and opened for student occupancy in August or September of 1998.

35. To Plaintiffs' knowledge Vicars General and/or other officials of the Diocese did nothing to prevent students from being viewed by school authorities and others while the students were partly or fully nude in the locker room and perhaps otherwise, or to see that Defendants provided the things promised to tuition payers.

36. To Plaintiffs' knowledge Patrick Finneran, now BEHS principal, did nothing to prevent students from being viewed by school authorities and others while the students were partly or fully nude in the locker room and perhaps otherwise, or to see that Defendants provided the things promised to tuition payers.

37. To Plaintiffs' knowledge Paul Runey, coach and Athletic Director of BEHS, did nothing to prevent students from being viewed by school authorities and others while the students were partly or fully nude in the locker room and perhaps otherwise, or to see that Defendants provided the things promised to tuition payers.

38. Robert Guglielmone, individually, in addition to his official role as Bishop, head, of the Diocese of Charleston, did nothing to prevent students from being viewed by school authorities and others while the students were partly or fully nude in the locker room and perhaps otherwise, and allowed the windows, the viewing, and the non disclosure of same to remain in place for approximately ten years of his term as Bishop. At the time of discovery of the events here condemned, the Bishop had held his position for some nine or ten years, and approved

and/or allowed the viewing of the young students under his authority, control, and care partially or completely nude for that entire time.

39.     Tortfeasors 1-10 are not fully known to Plaintiffs at this time. Upon fuller discovery of their identities and acts Plaintiffs reserve the right to add them to this litigation.

40.     This Court has jurisdiction over the parties hereto and the subject matter hereof, and venue is proper.

## FACTUAL SUMMARY OF KNOWN VOYERISM

41.     Upon information and belief, Jeffrey Alan Scofield is a graduate of BEHS who was later hired to serve as the school's Director of Sports Information.  Scofield at all times was an actual and/or apparent agent, servant, and/or employee of the Defendants.

### A.    SCOFIELD USES HIS OFFICE AS A "WINDOW" FOR SEXUAL EXPLOITATION OF YOUNG STUDENTS

42.     The locker rooms are used by male and female BEHS students and athletes who use the locker room in connection with athletic activities.

43.     Scofield's office at BEHS was one of three athletic offices that had a vantage or viewing point into the school's dressing rooms / locker rooms. The current campus of BEHS was constructed approximately twenty years ago and windows were intentionally designed and installed in three athletic offices to view into the various boys and girls dressing/locker rooms. Scofield's office in particular contained a window looking directly into the corridor of lockers and dressing area of each locker room.

44.     Plaintiffs, students at BEHS, routinely used the locker rooms for showering, changing clothes, and using the toilets and urinals during the course of their academic and athletic programs. Due to placement of windows in the athletic offices overviewing the corridor of lockers and dressing areas, including the window in Scofield's office, the children regularly engaged in

private activities, including, but not limited to, changing clothes, disrobing, using the bathroom, and showering and drying in view of others including adult coaches, officials, staff, and unknown persons.

### B. SCOFIELD'S ILLICIT VOYEURISM AND SURVEILLANCE COMES TO LIGHT

45. Upon information and belief, at some time on or about to May 1, 2019, the Defendants learned that Scofield had surreptitiously filmed students while they used a BEHS locker room, through the window viewing the locker room, and had stored recordings on an electronic device believed to be a computer belonging to BEHS.

46. Breaking from their normal practice, some Defendant reported the above to law enforcement authorities. A perpetrator, an agent of the Diocese, was arrested by the City of Charleston Police Department ("CPD") on voyeurism related charges on the same day.

47. On or around May 1, 2019, the parents of some victims were notified that their child/children had been recorded by Scofield, without consent or knowledge, in the locker room while partially and/or fully nude.

48. News accounts indicate that images were taken by Scofield in February 2019 through one of the referenced viewing windows or otherwise peering into the locker room for the illicit purpose of surreptitiously observing, recording, and storing video, audio, and still images of victims while they undressed and/or were partly or fully nude.

49. Upon information and belief, Scofield's illicit acts were motivated by: (i) his sexual orientation and/or experimentation (according to Scofield's arrest affidavit, the reason Scofield made and retained the victim videos was because they "piqued his interest"); (ii) his social media involvement with sites such as "Grindr" (advertised as "the world's largest social networking app for gay, bi, trans and queer people"); and (iii) his fondness for young boys (according to Scofield's

arrest affidavit, Scofield admitted to police he "liked younger guys" and thought it was "hot" that his victims were 15 years old).

50.     Upon further information and belief, Scofield used equipment owned and/or controlled, albeit improperly so, by the Defendants to capture, upload, and/or store the videos, audio-recordings, and/or photographs depicting victim(s) naked or partially clothed.

51.     On further information and belief, CPD, SLED, the Special Victims Unit, Internet Crimes Against Children Task Force, the South Carolina Attorney General's Office and others are or have been conducting investigations into Defendants' and/or the recorder's activities.

52.     The Defendants were at all relevant times familiar with the activity of nude or partially nude photo making by agents of the Diocese having previously dealt with such sexual abuse acts, and many others, by priests working at churches and/or teaching school in the Diocese.

**C.     INVASION OF PRIVACY OF BEHS STUDENTS**

53.     For approximately twenty years, juvenile students, athletes, guests and others using BEHS's locker rooms have been viewed partially clothed, disrobing, showering, drying off, and fully nude by adult coaches, athletic officials, other agents, employees, and/or servants of the Defendants, and possibly others, due to the deliberate design of the athletic offices and locker rooms at BEHS, which were created for that very purpose.

54.     Scofield was only one such agent, employee, and/or servant of the Defendants, who had routine opportunity to observe BEHS students engaged in locker room activities (dressing/undressing, bathing/showering, using the facilities). Scofield had served as BEHS's Director of Sports Information for approximately five years, and, upon information and belief, during the same period Scofield had access to the window locations from which he watched, recorded, and/or took sexual pleasure from watching and recording students engaging in routine,

innocent, and what Plaintiffs believed to be protected and private locker room activities. As detailed herein, it is known (at least to some degree) how Scofield used his position, office, and view of the young students that undressed in his plain view; that is, as access to a steady, replenishing stream of unassuming and trusting victims, child students, who Scofield used to gain sexual pleasure and pornographic material for Scofield's personal use and potential and/or actual distribution and exposure to others.

55.    It is not yet fully known who, to what extent, or over what span of time he and others who had similar access to victims, used the opportunity for perverse personal pleasure; however, the fact that adult coaches, athletic officials, and other agents, employees, and/or servants of the Defendants and even strangers had routine, unfettered view of students in a locker room is intolerable and an invasion of privacy; and this arrangement has been in place for some twenty (20) years with the full knowledge, approval, utilization and control of Defendants.

56.    Upon information and belief, BEHS administrators, by and through the Diocese of Charleston and the Bishop, have terminated the known voyeur and obstructed the view of the locker rooms from the subject athletic offices by quickly placing plywood over the office windows as a measure to prevent further viewing. If this type of fix can be implemented in just a day or two it is absolutely mind boggling and completely intolerable that Defendants let this activity go unchecked for twenty years because it proves Defendants' ability to easily control the subject premises and the safety of the children they were entrusted with. Furthermore, it proves there was no compelling need for the viewing windows in the first place, ownership, control and the right to control being with Defendants, and capable of easy and inexpensive modification in short order without any threat to the integrity of the building itself.

### CLASS ALLEGATIONS AGAINST BISHOP ENGLAND, THE DIOCESE OF CHARLESTON, AND THE BISHOP

### A.     MAINTAINABILITY OF CLASS ACTION

57.     Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein and seek the formation of two classes, approval of class representatives and class counsel for each class as front end matters.

58.     The TUITION CLASS consists of all persons who paid tuition for BEHS student(s) – male and female – who at any time from the opening of the school year in 1998 through May 10, 2019 have been subjected to the use of BEHS's dressing rooms /locker rooms to undress and/or dress, shower, or for any other activity that would cause the student to be partially or fully nude, exposed to the viewing windows., Defendants' representatives or others, for photographing, recording, viewing, or otherwise intruded upon, subjected to, and exposed to people, employees of any Defendant, coaches, athletic officials or other agents, employees, servants, and invitees or permittees of the Defendants, or other persons; such students not being provided the safe, moral, respectful and private the manner Defendants represented they would be.   The Class is maintainable under Rule 23(a) of the South Carolina Rules of Civil Procedure for the reasons set forth previously herein and that follow.  Tuition Plaintiff is representative of the Class.  Hereinafter this class may be referred to as the "TUITION CLASS."

59.     Also, Plaintiffs seek a second class made up of students who during the relevant time period as set forth above were required by Defendants to robe and/or disrobe in the view of third parties. This class will be referred to as the VIEWED CLASS.

60.     The precise identities of the members of the Classes will be readily ascertainable through the records of Defendants.

61.     The VIEWED CLASS seeks damages for injuries to the members proximately and directly resulting from Defendants' wrongful conduct.

62.     The number of members of each Class is likely to well exceed 100 persons, perhaps several hundred or even a thousand or more individuals, and, therefore, are so numerous that joinder of all members is impracticable; the BEHS average student population being some seven hundred persons over each of the years since 1998.

63.     The questions of law and fact in this action are common to the respective Classes and predominate over any question affecting only individual Class members.  They include, among others, questions as to:

        a.     Tuition payment and the basis for same.

        b.     Whether the Defendants are directly liable to the Class members for negligently designing, constructing, and maintaining and supervising or failing to supervise, the athletic offices and locker rooms at BEHS in a manner which exposed the using minors to be viewable partially or fully nude;

        c.     Whether the Class members had a reasonable expectation of privacy in the dressing rooms / locker rooms;

        d.     Whether Defendants' employees, coaches, athletic officials, or other agents, employees, and/or servants, invitees or permittees of the Defendants' observation, viewing, watching, or objectification of the students was an intrusion or invasion of privacy or other improper action by Defendants or any of them;

        e.     Whether the students undressing, dressing, disrobing, and other similar locker room acts is a private matter;

        f.     Whether Class members were or should have been warned that the students may be viewed by third parties, including officials/agents, invitees, permittees, and others, while such class members were naked or less than fully clothed;

        g.     Whether the Class members may reasonably expect the students undressing, dressing, disrobing, and other similar locker room acts would be free from exposure to adults, such as Scofield and/or any other persons, including the making available of images of Plaintiffs to other persons;

        h.     Whether Defendants' type of conduct was of a nature that would create an unsafe environment that could cause mental and/or physical injury to a person of ordinary sensibilities and intelligence in the same or similar circumstances as the students as a matter of law, and ultimately, as a matter of fact,

and be detrimental to the environment represented by the Defendants;

i.    Whether the viewing activities of agents, employees, servants of the Defendants, observation, viewing, or watching of the students was intentional by Defendants, was done willingly, and the result of such conduct was desired by the actor(s) and/or the actors knew or ought to have known that injurious results would flow from their conduct; and

j.    Whether Scofield or the other coaches, athletic officials or other agents, employees, and/or servants, invitees and/or permittees and/or others subject to the Diocese Defendants' control or right to control, observation, viewing, or watching of the students was enabled by their employment by the Defendants or the placing of the windows and requiring student use of dressing/locker room facilities for their intended and usual purpose.

k.    Whether it is proper for Defendants herein to require students to disrobe in an area viewable by others.

64.    Plaintiffs' claims are typical of the claims of the Class members, and the defenses relied upon by Defendants are typical of the defenses likely to be asserted to the claims asserted by members of each respective class.

65.    Plaintiffs share legal interests identical to those of the Class members, therefore, Plaintiffs will fairly and adequately represent and protect the interests of the Classes and are fully able to do so.

66.    Counsel bringing this action are fully able to conduct these claims and this litigation.

67.    The amount in controversy with respect to each member of each of the two classes exceeds one hundred dollars.

<u>**COUNT I**</u>

**VIEWED CLASS WRONGFUL INTRUSION INTO PRIVATE AFFAIRS AGAINST THE DEFENDANTS**

68.    Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.  The allegations which follow apply as to each class.

69.     The VIEWED CLASS has a reasonable expectation of privacy when disrobing in the Dressing Rooms / Locker Rooms at BEHS.

70.     Adult coaches, athletic officials, and other agents, employees, and/or servants of the Defendants and even strangers had routine, unfettered view of students in a locker room constituted an intrusion into the dignity and privacy of the VIEWED CLASS. In particular, the children regularly engaged in private activities, including, but not limited to, changing clothes, disrobing, using the bathroom, and showering and drying in view of such persons.

71.     The intrusion into the VIEWED CLASS' privacy was substantial and unreasonable such that it would cause mental injury to a person of ordinary feelings and intelligence in the same circumstances. Without limitation, there was- and is- no justification for the Defendants to have viewed naked children.

72.     The intrusion into the VIEWED CLASS' privacy was also intentional, as the windows were intentionally designed and installed in three athletic offices to view into the various boys and girls dressing/locker rooms for the specific purpose of intruding upon the VIEWED CLASS' seclusion and dignity. Moreover, the Defendants knew or should have known that , knew many persons associated with Catholic schools and churches had viewed and abused minor children, creating an environment where such abuse and objectification would be able to develop, thrive, and prosper.

73.     The Defendants' wrongful intrusion upon the private affairs of the VIEWED CLASS as alleged herein, establishes as a matter of law, the fact of damages to be determined by the trier of fact such trier of fact able to consider their invaded privacy and dignity to which the VIEWED CLASS seeks damages of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorney's fees, and  with such additional relief and

items of recovery as may be permissible for a class of tuition payers as referenced.

## COUNT II

**TUITION CLASS DIRECT NEGLIGENCE AGAINST THE DEFENDANTS**

74.     Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.  The allegations which follow apply as to each class.

75.     Plaintiffs assert these claims against Defendants BEHS, the Diocese of Charleston, and/or the Bishop personally and in his official capacity, individually and on behalf of the TUITION CLASS.

76.     At all relevant times, Defendants owned, supervised, directed, operated and controlled BEHS or claimed the right to do so; although at various times when it suited their interests some or all Defendants have claimed BEHS was a separate entity from the Diocese of Charleston.

77.     At all relevant times, Defendants owed a special and continuing duty of care to maintain the safety and privacy of their students and athletes and other users of the facilities of the school, and to provide a moral, safe, and respectful environment for all students.

78.     At all relevant times, Defendants made assertions directly and indirectly to the TUITION CLASS that they would maintain the safety and privacy and morality of their students and athletes and other users of the facilities of the school and would treat students in a respectful and proper way.

79.     At all relevant times, Defendants owed a duty of care to those paying the tuition of students to maintain the safety and privacy and moral atmosphere of their students and athletes and other users of the facilities of the school.

80.    At all relevant times, Defendants appointed, engaged, employed, and/or contracted with architects, engineers, general contractors, builders, lawyers, insurers, and other professionals to design, build, update, upgrade, up-fit, remodel, revise, and maintain the premises, including the athletic offices and locker rooms.

81.    Defendants breached their duties to the TUITION CLASS members by designing, constructing, and maintaining the BEHS locker rooms and athletic offices in a way that adult athletic officials or their other agents, employees, and/or servants and others would have unfettered, open, and intrusive view of the students while they engaged in private activities such as dressing, undressing, being nude, disrobing, showering and drying, and an opportunity for actors and perpetrators to derive sexual pleasure from such observation and recorded material. They further breached their duties to the TUITION CLASS s by failing to update, upgrade, up-fit, remodel, modify, and/or revise the configuration of the boys' and girls' locker rooms at any point over the past twenty plus years prior to May 1, 2019, in a way that would remove, obstruct, or otherwise block the subject windows and protect the students.

82.    As a direct, proximate, immediate, and foreseeable result of BEHS, the Diocese of Charleston, and/or the Bishop's conduct, the TUITION CLASS has suffered permanent economic damages and members of the TUITION CLASS all have been proximately damaged by Defendants' conduct and seek damages of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorneys fees, and with such additional relief and items of recovery as may be permissible for a class of tuition payers as referenced.

## COUNT III

## TUITION CLASS UNJUST ENRICHMENT AGAINST THE DEFENDANTS

83.    Plaintiffs adopt by reference all allegations contained in the paragraphs above as if

fully set forth herein.

84.     Defendants were paid tuition in exchange for providing students an excellent educational experience and a safe, trusting, moral, caring, and respectful environment.

85.     Defendants knew or should have known, and intended, that students could and would be viewed from the viewing rooms.

86.     Defendants failed to take adequate steps to prevent students from being viewed from the viewing areas.

87.     Defendants failed to fulfill their duty to provide a safe environment.

88.     Defendants were unjustly enriched through the payments of tuition for a safe environment that was not provided.

89.     Defendants' unjust enrichment flows from the conduct described in this Complaint.

90.     Under common law principles the Defendants should not be permitted to retain the benefits conferred (tuition paid).

91.     Plaintiffs seek disgorgement of all tuition payments and establishment of a constructive trust from which the TUITION CLASS may obtain restitution of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorneys fees, and with such additional relief and items of recovery as may be permissible for a class of tuition payers as referenced

**COUNT IV**

**TUITION CLASS BREACH OF WARRANTY AGAINST THE DEFENDANTS**

92.     Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.

93.     At all relevant times, the Defendants appointed, engaged, employed, and/or contracted with Scofield to act as their actual and/or apparent, duly authorized agent, servant, and/or employee and permitted Scofield to remain as such for many years.

94.     At all relevant times, the Defendants granted access to BEHS to Scofield, including, but not limited to, viewing rooms and placed him in a position of trust and authority over the students.

95.     Students were to be provided an excellent educational experience and safe, trusting, moral, caring, and respectful environment, but were not.

96.     In consideration for these representations, the TUITION CLASS paid tuition and various fees.

97.     By viewing students, using photography, video, and/or audio recording equipment in or near the changing room, as well as by actually recording students, and/or by failing to prevent the same, the Defendants breached the above warranties and/or caused breaches of the above warranties made by Defendants.

98.     Each Defendant is liable individually, by virtue of warranties they themselves made. Furthermore, each Defendant is liable for each other's warranties.

99.     The Defendants are furthermore liable by virtue of the fact that they are each responsible for the others' conduct and that of their employees, agents, representatives, permittees and those within the course and scope of their agency.

100.     All BEHS students were required to take physical education classes.

101.    All students were required to use the subject locker rooms.

102.    All students were required to dress and undress in front of plate glass windows in the view of various BEHS faculty and staff members and others. The preserved recordings of student images on an instrument or instruments enabled others to view them.

103.    As a direct, foreseeable, and proximate result of Defendants' conduct, the TUITION CLASS has been proximately and directly harmed and damaged by Defendants in the amount of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorneys fees, and with such additional relief and items of recovery as may be permissible for a class of tuition payers as referenced.

## **COUNT V**

### **TUITION CLASS AND VIEWED CLASS NEGELEGENT HIRING, SUPERVISION AND RETENTION AGAINST THE DEFENDANTS**

104.    Plaintiffs adopt by reference all allegations contained in the paragraphs above as if fully set forth herein.

105.    At all relevant times, the Defendants appointed, engaged, employed and/or contracted with Scofield and others to act as their actual and/or apparent, duly authorized agent, servant, and/or employee and permitted him to remain as such for all of the employment periods.

106.    At all relevant times, the Defendants granted privileges to Scofield and others to practice as an administrator, athletic director, coach, teacher, spiritual advisor, role model, and/or counselor and, thereby, render educational, athletic, spiritual, and personal services and guidance to their students, other youth, congregants, and/or community members.

107.    At all relevant times, the Defendants acted by and through Scofield and others – their agents, employees, and/or servants – acting within the scope and course of his agency and/or employment.

108.    At all relevant times, the Defendants owed a continuing duty to: reasonably, carefully, conscientiously secure the services of qualified and well-trained agents, servants, and/or employees; to properly investigate, credential, qualify, select, monitor, and supervise their agents, servants, and/or employees; to promulgate and enforce proper and effective standards, procedures, protocols, systems, and rules to ensure quality care, safety, and privacy of the students; and to otherwise assure and maintain the safety and privacy of the students.

109.    The Defendants negligently breached the above-mentioned duties by hiring, retaining, failing to properly train, and failing to properly supervise Scofield and others, despite any reputation for improper, unlawful, inappropriate, lewd, and unprofessional conduct.

110.    The Defendants knew or should have known that Scofield engaged in improper, unlawful, inappropriate, lewd, illegal, and unprofessional conduct, including, but not limited to, photographing and/or videotaping students while naked and without consent or authorization and taking perverse pleasure in observing students innocently taking part in locker room acts, or otherwise viewing them.

111.    As a direct and proximate result of the Defendants' negligent hiring, training, retention, and supervision of Scofield and others, the TUITION CLASS and the VIEWED CLASS have suffered permanent damages and pecuniary losses to be established at trial.

### COUNT VI
### VIEWED CLASS NEGLIGENCE AGAINST ALL DEFENDANTS

112.    Plaintiffs adopt by reference all allegations contained in the paragraphs above as if

fully set forth herein.

113.    Defendants are vicariously liable for all of their actions related to the matters addressed in this lawsuit.

114.    Plaintiffs further assert this claim against Defendants in all of their various capacities.

115.    At all relevant times, Defendants directed, allowed, and/or encouraged adult athletic officials or others, including all their agents, employees, and/or servants, to observe, watch, monitor, spy, or otherwise view the VIEWED CLASS members in the subject locker rooms (male and female).

116.    Dressing rooms /Locker rooms are areas objectively and subjectively private, secure, and intimate places, and the VIEWED CLASS reasonably expected that they would have privacy in the subject locker rooms because, among other reasons, the male and female students and athletes, guests and others routinely undress, dress, shower, dry, and change clothes in these areas, which involves the participants being less than fully clothed and naked at times.

117.    Defendants and their agents or employees and adult athletic officials or other agents, employees, and/or servants of the Defendants who had access to the athletic offices with windows into the locker rooms invaded the privacy of the students by observing, watching, spying, or otherwise viewing them in the process of undressing, being nude, disrobing, and/or showering as well as performing acts of personal hygiene.  This conduct is and would be highly offensive to any ordinary, reasonably prudent person.

118.    Defendants' employees, agents, and others invaded the privacy of students by doing these things, and by viewing, photographing, videotaping, recording, and/or otherwise sexually exploiting the VIEWED CLASS while they were in the locker room for school and/or athletic

and/or other proper activities without victims' knowledge or consent.

119.     As a direct and proximate result of the Defendants' negligent hiring, training, retention, and supervision of agents and/or employees, the VIEWED CLASS has suffered damages and pecuniary losses to be established at trial.

120.     As the principals, masters, religious leaders, and/or employers of agents and various employees/servants and the other adult athletic officials or other agents, employees, and/or servants and/or others who had access to the athletic offices with windows or view corridors and invaded the students' privacy, the Defendants are liable for all the injuries and damages proximately and directly suffered by the VIEWED CLASS caused by the acts committed by Scofield and others, and seeks damages of approximately One Hundred Fifty Million and 00/100 Dollars ($150,000,000.00) together with costs and attorneys fees, and  with such additional relief and items of recovery as may be permissible for a class of tuition payers as referenced.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

a.     That the court determine that the claims alleged herein be maintained as Class actions under Rule 23 of the South Carolina Rules of Civil Procedure.

b.     That Plaintiffs and Class members be awarded damages for each class (TUITION and VIEWED), including disgorgement of ill gotten gains tuition related, and personal injury or tort damages against Defendants to members of the VIEWED CLASS against Defendants in an amount to be proven at trial;

c.     Establishment of the classes sought, all as to the TUITION CLASS and the VIEWED CLASS.

d.     Appointment of Plaintiffs as class representatives as sought, all as to the TUITION

CLASS and VIEWED CLASS.

       e.     Approval of class counsel as sought, all as to the TUITION CLASS and VIEWED CLASS.

       f.     Awarding Plaintiffs and the Class members actual damages in an amount to be proven at trial;

       g.     Awarding Plaintiffs and the Class members punitive damages in an amount to be proven at trial;

       h.     Awarding Plaintiffs and the Class members such other relief as may be appropriate; and

       i.     Granting Plaintiffs and the Class members prejudgment interest, costs, and reasonable attorneys' fees.

## **JURY TRIAL DEMAND**

     Plaintiffs demand that this case be tried by a jury on all counts.

     Respectfully submitted,

     THE RICHTER FIRM, LLC

     <u>s/Lawrence E. Richter, Jr.</u>
     Lawrence E. Richter, Jr. (SC Bar No. 4724)
     Anna E. Richter (SC Bar No. 100787)
     622 Johnnie Dodds Blvd.
     Mt. Pleasant, SC  29464
     Phone: 843-849-6000
     LRichter@RichterFirm.com
     Anna@RichterFirm.com

     -AND-

s/Carl L. Solomon
Carl L. Solomon (SC Bar No. 7306)
Solomon Law Group, LLC
P.O. Box 1866
Columbia, SC  29202
Phone: 803-391-3120
carl@solomonlawsc.com


-AND-

s/Daniel Scott Slotchiver
Daniel Scott Slotchiver (SC Bar No. 15129)
Stephen Slotchiver (SC Bar No. 65477)
Slotchiver & Slotchiver LLP
751 Johnnie Dodds Blvd, Suite 100
Mt. Pleasant, South Carolina 29464
Phone: 843-577-6531
dan@slotchiverlaw.com
steve@slotchiverlaw.com


-AND-

s/Brent S. Halversen
Brent S. Halversen (SC Bar No. 76495)
Brent Souther Halversen, LLC
751 Johnnie Dodds Blvd, Suite 200
Mt. Pleasant, South Carolina 29464
Phone: 843-284-5790
brent@halversenlaw.com

*Attorneys for Plaintiffs*


August 13, 2021
Mount Pleasant, South Carolina